Jacob Markowitz, J.
This is a motion to confirm the second supplemental report of a Referee appointed by the court. In May, 1958, after the Referee had filed his original report, a remission to the Referee was directed for the purpose of considering various problems involved in the negotiation of a sale, by the trustee herein, of the securities of Universal Oil Products Company, including ‘ ‘ the methods, mechanics and procedures to be followed by the trustee ”, “ the partial or total *25 sale of the securities”, “ the question of the fixation of a minimum upset price ”, and “ provision for stock incentives for Universal’s employees
The second supplemental report of the Referee is based upon the evidence submitted at a hearing before him and upon the advice of the First Boston Corporation, heretofore appointed by the court as an expert, to advise both the Referee and the court. The report, among others, recommends (1) that all of the stock of Universal be sold under a contract of sale to be negotiated, subject to the court’s approval, with an investment banking house or syndicate of investment banking houses initially selected by the trustee from among the leading national investment banking houses capable of organizing and managing a group of underwriters to handle the transaction, the selection to be likewise subject to the court’s approval; (2) that there be no fixation of an upset price beneath which the securities are not to be sold; (3) that no contract of sale be approved by the court unless it incorporates a suitable stock incentive plan for key managerial and technical personnel of Universal.
The First Boston Corporation in its opinion stated: “ the sale of Universal Oil Products Company, in accordance with the terms of the Court’s orders, can best be effected on a negotiated basis through one or another of the leading national investment banking houses capable of organizing and managing a group of underwriters to handle the transaction.”
The opinion further states: “ (a) The requirements of the Court’s orders are for the widest public distribution among bonafide investors, effected through a nation-wide group of underwriters and dealers. This, as we understand it, is paramount in connection with the proposed sale, the purpose being to prevent the acquisition of control by one or another of the large oil companies to the deteriment of the so-called independent smaller companies. The only practical way of accomplishing the Court’s purpose is, in our opinion, through the selection of a capable and thoroughly responsible underwriting manager or managers committed to this purpose, and with every step in the design of the security or securities to be sold, the selection of participants in the group, and the setting of underwriting and selling terms and restrictions, to be undertaken with this requirement in mind. We consider that the moral commitment of a responsible and capable underwriter is as important as the contractual requirement for such distribution. ’ ’
The evidence before the Referee and the complete written opinion of the First Boston Corporation, annexed to his report, *26 amply support his conclusion that the sale of Universal’s stock should be effected through the negotiated sale recommended by him, rather than through competitive bidding. Although, in an ordinary case, there is much to be said for preferring competitive bidding to a negotiated sale, the unusual circumstances involved in a sale of Universal’s securities are such as to compel the conclusion that the purposes to be achieved can best be accomplished through a negotiated sale approved by the court, after a hearing before the Referee. No useful purpose would be served by detailing here the reasons why a negotiated sale of Universal’s securities is to be favored as the best means of securing the maximum price obtainable upon the terms and conditions imposed in the prior order of this court. The reasons are sufficiently set forth in the evidence summarized in the Referee’s report, in the Referee’s “findings of fact”, and in the written advice furnished to the Referee by the First Boston Corporation.
All of the parties to the proceeding who have an interest in the charitable trust- have given their views in favor of a negotiated sale.
Under the circumstances, the method of a private negotiated sale is fully consistent with the trust agreement and with the exercise of sound discretion of the court.
The Referee’s recommendation that no upset price be fixed is likewise well supported by the evidence before him, which is adverted to in his report.
The recommendation that there be a “ suitable stock incentive plan ” is supported by testimony of the chairman of the trustee’s board of directors that such a plan is desirable to reward outstanding men in the organization and furnish an incentive for further efforts in the future. The management of Universal has submitted a draft of such a plan to the trustee and it is contemplated that a plan will be submitted to the Referee for his approval.
The importance of the inclusion of an adequate stock incentive plan in the contract of sale cannot be over-emphasized. One of the reasons for the court’s conditional approval of the sale of the Universal stock was the “drag upon Universal’s continued ability to meet competition, while its stock remains in the hands of the trustee ” because of “ the difficulty of establishing stock option and stock bonus plans in order to give the outstanding members of its organization the incentive necessary to obtain their best efforts.” The plan to be adopted should not limit its incentive provisions to the top echelon of Universal’s management but should extend its benefits to the *27 classes of employees whose activities play an important part in the success of Universal’s operations. The chairman of the trustee’s board of directors testified before the Referee that a very substantial portion of the value of Universal’s stock consists of the “brains of the organization ”.
The recommendation that the sale be of all Universal stock, and not a partial sale, is also warranted by the testimony before the Referee subject, however, to the allocation to emloyees of Universal.
A hearing is to be held by the Referee for the purposes of considering and making recommendations within the framework of the proceedings heretofore had and subject to court approval with respect to:
(i) whether the selection by the trustee of the investment bankers (whose names shall be set forth in the notice) as managers of an underwriting group shall be approved or whether the trustees should negotiate with other competent investment bankers who may appear and give evidence in the hearing before the Referee;
(ii) whether the terms and conditions of the contract of sale of shares of Universal Oil Products Company and the underwriting agreements (draft copies of which shall be made available for inspection at the offices of the Referee and counsel for the trustee) should be approved, subject to final approval with respect to price and related matters;
(iii) whether the terms and conditions of the Employees’ Stock Incentive Plan, including the classes of employees to be covered thereby and other pertinent matters related thereto, shall be approved; and
(iv) such other matters related to the sale of Universal Oil Products Company as may properly come before the Referee.
The hearing shall be on notice, the contents of which shall be determined by the Referee, to the parties in the within proceeding, the Attorney General of the United States, and advertised in the same newspapers set forth in the order to show cause herein and in two newspapers in the City of Chicago once a week for two successive weeks and in a special bulletin or newsletter to be issued by Universal Oil Products Company to its employees.
The foregoing constitutes the order of this court.
(Supplemental opinion, January 7, 1959.)
This is a motion to confirm, with a slight modification, the third supplemental report of the Referee, which is based on a hearing held on December 15, 1958 and upon the written *28 advice of the First Boston Corporation, the expert advisor appointed by the court. This hearing was held for the following purposes: to ascertain and report (1) whether the selection by the trustee, of Lehman Brothers; Smith, Barney & Co. and Merrill Lynch, Pierce, Fenner & Smith, the investment bankers to manage the underwriting group should be approved, or whether the trustee should negotiate with other competent investment bankers who may appear and give evidence at the hearing; (2) whether the terms and conditions of the contract of sale and the underwriting agreements (draft copies of which were to be 'made available for inspection at the offices of the Referee and counsel for the trustee) should be approved, subject to final approval with respect to price and related matters; and (3) whether the terms and conditions of the stock incentive plan for employees should be approved. The hearing was ordered to be held upon notice to the parties and, in addition, notice through specified advertisements in New York, Chicago, and other newspapers and through a special bulletin or newsletter to be issued by Universal to its employees.
At the hearing, testimony was given by the chairman of the board of directors of the trustee, by a partner of Lehman Brothers, by the president of Universal, and by a member of a firm of actuaries and analysts which had assisted Universal in the drafting of a proposed stock option plan for certain of Universal’s employees.
It appears from the testimony and the Referee’s report that the trustee has negotiated a contract of sale, subject to the court’s approval, to the investment bankers named in the notices of the hearing, hereinafter referred to as the “ managing underwriters ”, for a price not yet fixed, but to be fixed later on, as will presently appear. The procedure to be followed calls for obtaining the court’s approval of the managing underwriters selected by the trustee and the terms and conditions, other than price, of the proposed contract of sale. The proposed contract contemplates a sale of the Universal securities by the trustee to Universal Oil Processes, Inc., hereinafter referred to as ‘ ‘ Processes ’ ’, a corporation organized by the managing underwriters for the purpose of purchasing the Universal stock out of the proceeds of the sale to the public of the stock of Processes. If the court’s approval is obtained, Processes is to file a registration statement with the Securities and Exchange Commission, to register its shares for sale to the public. Upon the subsequent approval by this court of the price at which Universal’s stock is to be sold to Processes, the managing under *29 writers will cause the ‘ ‘ price amendment ’ ’ to the registration statement to be promptly filed, so that it will become effective. All the authorized capital stock of Processes, except 5% reserved for issuance to employees, will be sold to the investing public through underwriters and dealers participating in the offering. The proceeds of the sale of the Processes stock will be used to pay the trustee the purchase price of the Universal securities. Thereupon Universal will be merged with Processes, which will assume Universal’s obligations and liabilities (except for designated obligations which will be prepaid by Processes). The name of Processes will then be changed to Universal Oil Products Company.
The Referee reports that the reason for the organization of Processes and the sale of its stock, instead of selling Universal’s stock, are tax benefits that will be obtained, under a tax ruling issued by the Internal Revenue Department.
The testimony before the Referee established to his satisfaction that the spread of 5]4%, which represents the difference between the proceeds received from the sale of the stock of Processes and the amount to be turned over to the trustee at the closing, “ is fair and equitable in the light of the type of offering involved and the requirements which must be met in connection with the offering.” Part of the spread represents a concession to dealers deemed essential in order to effect the widest possible distribution of the stock, particularly in the light of the fact that Universal is unknown to the investing public. Part of the spread represents compensation to the underwriters for the risks inherent in any offering and for the payment of all syndicate expenses, including legal fees, advertising, telephone and telegraph charges, distribution of prospectuses, etc. The remainder of the spread is designed to compensate the underwriting managers for the time and expense spent in originating the offering, investigating Universal, forming the syndicate and handling all details in connection with the public distribution. The First Boston Corporation has advised the Referee that the proposed spread is ‘ ‘ fair and appropriate ’ ’. Evidence offered before the Referee as to the spreads paid in offerings of stock by other industrial companies confirmed the reasonableness of the proposed spread.
Prior to the making of a final order approving the sale to Processes, the intervenors (independent oil companies) and Universal will enter into an agreement providing that Universal and its successor will continue for ten years its research and other activities and its policy of making its knowledge available *30 to the petroleum industry on a nondiscriminatory basis. This agreement will be approved by the directors and stockholders of Universal and by the stockholders of Processes, and upon the merger of Universal with Processes, the latter will assume Universal’s obligations, including said agreement.
The Referee finds that the provisions made, in the proposed contract between Universal and the intervenors, for the approval (prior to an order authorizing the sale) by Universal’s directors and stockholders of the proposed agreement between Universal and the intervenors, and for the signing of the agreement and the approval thereof by the stockholders of Processes, in conjunction with other provisions of the contract of sale, meet the requirements previously insisted upon by the intervenors and ordered by the court, as a condition of its approval of the sale of Universal’s securities.
The Referee also finds that the proposed contract of sale and proposed resolutions for amending the by-laws of Processes contain provisions meeting the requirement of the intervenors and the court, that a nominee of the intervenors be elected a director of Processes for a three-year term.
The proposed contract between the trustee and Processes and the proposed underwriting agreement between Processes and the underwriters, as well as other contracts to be executed, contain certain provisions for widespread distribution of the stock of Processes which the Referee finds satisfy the requirements of this court’s previous order and insure the widest possible dissemination of the stock among the members of the investing public. The testimony and statements of representatives of the proposed managing underwriters before both the Referee and the court indicate that (1) the managing underwriters plan to invite upward of 200 underwriters and of a like number of dealers to participate in selling Universal’s securities, all of whom would be financially responsible and of reputable character, (2) they morally commit themselves to achieve wide distribution, and (3) they will supervise the carrying out of the moral commitment of wide distribution by all the underwriters and dealers.
The Referee finds that the proposed option plan for employees of Universal, which was the subject of expert and other testimony, is adequate for the purpose of providing incentive for present key personnel to remain with Processes and for attracting desirable new personnel to Processes. The plan is not limited to the upper echelons of the present management, but extends to all employees whose activities, as the result of a *31 thorough study, were found to merit participation in the plan. 1; is contemplated that 75% of the 5% of Processes’ stock which will not be sold to the public will be issued to 80 present employees, the remaining 25% being reserved for future issuance to create additional incentives for present and future employees. It is to be noted that the officers and employees of Universal are to become the officers and employees of Processes upon the merger which is to occur immediately after Processes’ acquisition of Universal’s stock from the trustee.
The court finds that the Referee’s findings and recommendations are amply supported by the evidence before him and by the advice of the First Boston Corporation, the expert advisor appointed by the court. None of the parties who appeared before the Referee has made any objection to any phase of his report, except for a slight modification asked for by the trustee, which will be discussed presently. The question of the price to be fixed has not yet been submitted for the court’s approval. The procedure contemplated, which the Referee has approved, is for the hearing- of this motion to be adjourned without date, to be continued upon three days’ notice to the parties, so that the continuation of the hearing may take place after the close of the New York stock market the day before the effective date of the registration statement. On that afternoon, testimony will be taken regarding the price to be paid for the Universal securities (for which the managing underwriters are to be obligated) and reports will be obtained from the Ebasco Company and from the First Boston Corporation. The reason for holding the hearing on the afternoon of the last day before the registration statement is to take effect is (1) that the final price can be set by the parties only in the light of the market conditions existing on the offering date, and (2) that under the Securities Act of 1933 it is unlawful to sell until the registration statement is effective and the establishment of a price at an earlier public hearing may constitute a sale in violation of the act. The court is in full accord with the procedure suggested.
On the hearing of the present motion, no objection to the confirmation of the Referee’s report was expressed by anyone. The only modification sought in the order to show cause, applied for by the trustee, relates to the Referee’s recommendation (7e) that no final order approving the price and authorizing a sale be made until the certificate of incorporation of Processes shall have been amended to reflect the number of shares to be issued and sold to the public, and the number of shares to be reserved for issuance to employees. The trustee states that the *32 precise number of shares to be issued to the public and reserved for Universal employees cannot be determined until after the court’s approval of the price. The per share price should be established at a popular price range which would facilitate and encourage wide distribution of the stock. The trustee’s attorney states that an appropriate amendment will be made prior to the closing so that all the authorized shares will be issued to the public except those reserved for stock options.
The motion is granted, except as to paragraph 7e of the Referee’s recommendations. An appropriate amendment to the certificate of incorporation of Processes is to be made prior to the closing of the sale of Universal’s securities. The hearing is adjourned without date, to be continued upon three days’ notice to the parties, for the purpose of fixing and approving the price to be fixed in the contract of sale of Universal’s securities and such other purposes as may be appropriate.