Jacob Markowitz, J.
This proceeding (Civ. Prac. Act, art. 79) was commenced in the Spring of 1956 by Guaranty Trust Company (hereinafter referred to as “ Guaranty ” for the purpose of obtaining the court’s approval of a sale by Guaranty of the. securities of Universal Oil Products Company (hereinafter referred to as “Universal”), which constituted substantially all the corpus of a charitable trust of which Guaranty was the trustee. After many hearings before a Referee appointed ¡by the court, and after numerous proceedings *1063 before the court (3 Misc 2d 390, 3 A D 2d 1, 16 Misc 2d 304, 16 Misc 2d 282,15 Misc 2d 23,15 Misc 2d 507), an order was finally made, on February 4, 1959, approving the sale of the Universal securities for $72,500,000 and authorizing the Guaranty to consummate the sale at that price, upon specified terms and conditions. The order directed Guaranty to file an account of its proceedings as trustee within four months and reserved the fixation of the compensation of Guaranty, the Referee, court-appointed advisors, and counsel, for determination upon Guaranty’s motion to settle its account. Pursuant to said order, Guaranty consummated the sale of the Universal securities at the price approved by the court and filed an account of its proceedings as trustee, covering the period from October 26, 1944, the date of the inception of the trust, to February 19, 1959.
Guaranty now applies for judicial settlement and approval of its account and for the fixation of the compensation of the Referee, the court-appointed advisors, and counsel. There is also before the court an application by the managing underwriters, through whom the sale of the Universal securities was effected, for an order (1) approving the actions taken by them or on their behalf pursuant to the order of February 4,1959, and the agreements executed and delivered under that order and (2) releasing and discharging them from their obligations and duties under the order of February 4. The purchaser of the Universal securities, Universal Oil Processes, Inc. (whose name has since been changed to Universal Oil Products Company, formerly the name of the seller), also applies for an order releasing and discharging it from further obligations and duties under the order of February 4. In addition to these motions, there is one by Guaranty which renews its prior motion of April 10, 1958 to confirm in part and disaffirm in part those portions of the first report of the Referee, dated February 25,1958, which deal with the compensation to which Guaranty is entitled. (Determination of Guaranty’s motion of April 10, 1958 had been held in abeyance by the court, with the approval of all parties, to await the outcome of the sale of the Universal securities.) In the alternative, Guaranty applies for an order £ £ opening the record in the matter of petitioner’s compensation, for the purpose of admitting evidence from the Donors in respect of the Referee’s finding limiting petitioner’s compensation to $50,000 per annum” for services other than those rendered in connection with the sale of the Universal securities.
The motion of the managing underwriters for approval of their actions and proceedings and for their discharge is granted. The purpose for which the order of February 4, 1959 expressly *1064 retained jurisdiction of the underwriters was to ensure their carrying out of the terms and conditions of the order and of the agreements approved therein — so as to achieve as widespread dissemination as possible of the Universal securities in order to minimize the possibility of their acquisition by one or more of the major oil companies. (The reasons for this appear in the court’s opinion, 16 Misc 2d 304.) The affidavits submitted by the underwriters satisfy the court that the movants have complied in all respects with the requirements of the order. No claim to the contrary has been made by the Attorney-General, who represents the indefinite beneficiaries of the trust or by any other party to this proceeding. In the circumstances, the underwriters ’ motion for approval of their actions and proceedings and for their discharge is granted.
The application for discharge, made by the corporation which purchased the Universal securities, is likewise granted. The order of February 4, 1959 retained jurisdiction of the said movant only for the purpose of ensuring that it would carry out those provisions of the order which imposed certain requirements upon it. The objective of said requirements was, primarily, the adoption by the purchaser of a court-approved stock option plan for employees and the purchaser’s making of a contract with independent oil companies, providing that the purchaser would continue, for 10 years, the research and other activities of Universal and the latter’s policy of making its knowledge available to the petroleum industry on a nondiscriminatory basis. The affidavit of the purchaser’s president satisfies the court that the purchaser has done what it was required to do by the order of February 4,1959. No opposition to the granting of its application has been voiced by any of the parties. Its motion to be discharged is, therefore, granted.
The trustee, the American Chemical Society, and the Attorney-General, have specifically stated, at the hearing held on May 6, 1959, that they have no objections to the fees requested by the court-appointed advisors, the First Boston Corporation in the sum of $150,000 and Ebasco Services Incorporated in the sum of $60,00. The Referee, stated as to the advisors ‘ ‘ the contribution which each of them made towards accomplishing the result that has been accomplished here was tremendous. * * * Ebasco’s investigations of the company, the advice which they gave to you and to me, * * * and the report which they first rendered orally to us and then put into writing and had filed * * * was a fine piece of work, involving a great deal of effort and digging.” As to the services of the First Boston Corporation, the Referee, after pointing out that ‘ ‘ this *1065 was a most complicated transaction ’ ’ emphasized the fact that they ‘ ‘ placed their whole organization to the disposal of this matter ” and that “ there were innumerable conferences between representatives of that firm * * * and others.” The Referee added that the fees requested are ‘ ‘ entirely fair and reasonable.” This court is intimately acquainted with the services rendered by both advisors and has no hesitation in agreeing with the Referee ’s observations. Bach of the advisors did a superlative piece of work. The fine result achieved, to a very large extent, reflects the valuable contributions made by said advisors. The fees requested by them are, in the court’s opinion, eminently fair and reasonable. In the circumstances, the applications of the advisors for allowance of the fees requested by them are granted.
We turn now to Guaranty’s renewal of its motion to affirm, in part, and disaffirm, in part, the Referee’s first report and its alternative application for permission to introduce further testimony. The Referee had reported that payments of $50,000 per annum, which Guaranty had been receiving from the inception of the trust, represented all the compensation to which Guaranty was entitled for its services as trustee, except that it was entitled to reasonable additional compensation for such services as it might render in bringing about a sale of Universal’s securities. Guaranty seeks disaffirmance by the court of the report to the extent that it finds that Guaranty is entitled to no further compensation for services rendered by it other than those involved in bringing about the sale of the Universal securities. The Referee’s conclusion, that $50,000 per annum was to constitute full compensation for Guaranty’s nonsale services, was to some extent predicated upon a finding that Guaranty, in negotiations with the donors preceding its acceptance of the trust had so agreed. The Referee emphasized “ the absence of testimony from the donors to the contrary.” Guaranty contends that the Referee erred in making such a finding because (1) it was allegedly contrary to the language of the trust indenture and (2) it was allegedly not supported by the evidence. It further maintains that it should at least be granted an opportunity to offer testimony by the donors refuting the finding that $50,000 per annum was to constitute full compensation for all the trustee’s nonsale services. It urges that the pleadings before the Referee had raised no issue as to an agreement with the donors limiting the trustee’s fee to $50,000 per annum and that it could not reasonably have anticipated that the Referee would consider whether there was such an agreement, antedating the indenture, or base his conclusions, even in *1066 part, upon the existence of such an agreement. Affidavits by officials of some of the donor companies are submitted which deny that any such agreement was made.
All parties, including the Attorney-General, agree that Guaranty is entitled to reasonable compensation for the services it rendered in bringing about the sale of Universal’s securities for $72,500,000. A proper evaluation of what constitutes reasonable compensation for such services requires remission of the matter to the Referee for the taking of such proof as may be deemed necessary as to the quantum of the services performed and as to their reasonable value. The court is of opinion, also, that a proper exercise of discretion requires that Guaranty’s motion for alternative relief be granted to the extent of permitting it to offer evidence from the donors before the Referee, to the effect that there was no agreement limiting its compensation to $50,000 per annum for nonsale services. The court is not now passing upon the admissibility of such evidence as Guaranty may offer, upon the weight to be accorded to it, or upon its effect on the Referee’s previous finding — those being-matters to be determined, in the first instance, by the Referee. The Attorney-General, the trustee, and others, are free, in the reopened hearing before the Referee, to offer such evidence as they may deem advisable, to cross-examine the new witnesses who may testify, and to recall witnesses who previously testified, for further cross-examination. In view of this disposition, it is unnecessary, at this time, to determine that branch of Guaranty’s motion which requests disaffirmance of part of the Referee’s first report. Guaranty’s motion to affirm that part of the Referee’s first report which finds that it is entitled to reasonable compensation for services rendered in bringing about the sale is granted, and the application to disaffirm the finding that it is entitled to no other compensation is held in abeyance, . lending the further report of the Referee.
There remains for consideration the application to settle the trustee’s account and to fix the fees of the Referee and counsel. In view of the fact that the services of the Referee and of the trustee’s counsel are to continue, the fixation of their fees will be held in abeyance pending the further report of the Referee. As the trustee’s account lists payments of counsel fees in substantial amounts, which must be considered in connection with the final fixation of the compensation of the trustee and counsel, the application to settle and approve the account will similarly be held in abeyance until the court’s action upon the further report of the Referee. Settle order.